26742. BARNETT v. HOLLIDAY et al.

SUBMITTED SEPTEMBER 15, 1971—DECIDED OCTOBER 7, 1971—REHEARING DENIED NOVEMBER 18, 1971.

*Lawson E. Thompson,* for appellant.

*Walton Hardin,* for appellees.

GRICE, Justice. The substantial question in this appeal is whether the plaintiffs established title to the land in dispute so as to sustain the verdict and judgment in their favor.

This question arises from a suit filed in the Superior Court of Wilkes County by G. O. Holliday and C. B. Wright against M. H. Barnett, seeking injunctive relief to restrain trespass upon a 17-acre tract which the plaintiffs alleged they owned. The defendant's answer denied that the plaintiffs owned all of this tract or that he was trespassing on their land. The controversy is actually over whether approximately two acres are in the southeastern portion of the 17-acre tract claimed by the plaintiffs, or in the northeastern portion of a tract claimed by the defendant. The remaining portion of the land owned by the parties is not involved in this case.

The defendant's motions for new trial on the general grounds and judgment notwithstanding the verdict were denied, and the appeal is from those rulings.

1. The motion to transfer the case to the Court of Appeals is denied since this is an equity case and also one involving title to land within the purview of the Constitution (*Code Ann.* § 2-3704).

2. We come now to the substantial question above referred to.

The plaintiffs sought to establish title to the two-acre tract in dispute by three methods: (1) by deed, (2) by seven years adverse possession under color of title and (3) by 20 years adverse possession.

In our view of the issues it is only necessary to deal with the third method.

The plaintiffs contend that Eddie Mathis acquired title to the two-acre tract by 20 years adverse possession and that by subsequent deeds they obtained fee simple title through him.

Before referring to salient portions of the evidence, we call attention to several well established principles of law that are applicable here.

First, "Actual adverse possession of lands for 20 years, by itself, shall give good title by prescription against everyone, except the State or persons laboring under the disabilities hereinafter specified." *Code* § 85-406.

Also, "Actual possession of lands is evidenced by inclosure, cultivation or any use and occupation thereof which is so notorious as to attract the attention of every adverse claimant, and so exclusive as to prevent actual occupation by another." *Code* § 85-403.

Furthermore, "Possession to be the foundation of a prescription must be in the right of the possessor, and not of another; must not have originated in fraud; must be public, continuous, exclusive, uninterrupted, and peaceable, and be accompanied by a claim of right. Permissive possession cannot be the foundation of a prescription, until an adverse claim and actual notice to the other party." *Code* § 85-402.

And finally, "Adverse possession is usually a mixed question of law and fact—whether the facts exist which constitute adverse possession, is for the jury to judge. Whether, assuming the facts proven to be true, they constitute adverse possession, is for the court to decide." *Paxson v. Bailey*, 17 Ga. 600 (2).

Now let us examine those essential portions of the

evidence which, in our view are sufficient to raise jury issues as to the claim of 20 years adverse possession by Eddie Mathis against the defendant.

J. H. Blackman testified as to the two acres in dispute, stating that Eddie Mathis "used it for probably thirty years or more ... It's no question about Eddie Mathis. He has used it for thirty odd years."

The plaintiff Holliday testified that the entire 17-acre tract was enclosed by a fence and was used by Eddie Mathis; and that Eddie Mathis had been pasturing the thing for twenty years ... I know it's been pastured. I've been passing there all my life."

The plaintiff Wright testified as follows: that he asked the defendant, "'Mr. Barnett, why in the world didn't you straighten the line out then?' [1958], and he said, 'Well, I couldn't do nothing with Eddie.' I said, 'That's what you've got your courts for. Why wait twelve years later to bring it up?'" He swore that "Eddie always had a bunch of cows out there on this same property"; that the fence wire looked as if "it had been there thirty or forty years." He stated that he asked the defendant, "'Mr. Barnett, if this is your land why did you let Mr. Mathis give the city of Washington a right of way and sewage there?' and he said, 'I don't know', and I said, 'Well if it was my land they certainly wouldn't run a sewage through my land; I'd get paid for it instead of Eddie.'" He testified further that the sewer line "runs across" the two acres of land. He also said that "the whole area had a fence all the way around it and it had four or five cross fences like everybody that's got pastures, they've got it cut up in different ones. When I walked over it I said I never saw as many cut up pastures for this small a tract. He had it cut up in four or five different pastures."

William B. Fickling testified that he was a surveyor and in 1962 acquired for the City of Washington the sewer easement above referred to. He further stated that he "did not acquire an easement from Mr. Barnett. The only thing I was concerned with was Mr. Mathis"; that he acquired the easement from Eddie Mathis; and that "Mr. Mathis showed

me his property lines."

The defendant Barnett was asked if Eddie Mathis ever used his land. He answered, "Yes, sir." When asked if it was by consent, he replied, "At first it was."

There is other evidence on the question of prescription. Some of it is favorable to the defendant. However, we deem it unnecessary to refer to it because the above is sufficient.

As we appraise it, the testimony certainly did not demand a verdict for the defendant. The evidence, with its deductions and inferences, was sufficient to submit to the jury for it to decide whether the facts required for 20 years adverse possession were established.

The jury found for the plaintiffs, and the verdict bears the approval of the trial court.

It properly denied the defendant's motions for new trial and judgment notwithstanding the verdict.

*Judgments affirmed. All the Justices concur, except Felton, J., who dissents.*